[Cite as *State v. Schreiber*, 2019-Ohio-2963.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2018-03-026 |
| | : | O P I N I O N |
| - vs - | | 7/22/2019 |
| | : | |
| JOSHUA T. SCHREIBER, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 16CR32217

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee

J.A. Kovach Law Co., LPA, Valerie Sargent-Wood, 115 West Main Street, Eaton, Ohio 45320, for appellant

**HENDRICKSON, P.J.**

{¶ 1}   Appellant, Joshua T. Schreiber, appeals a decision of the Warren County Court of Common Pleas revoking his community control and reimposing his original sentence.

{¶ 2}   In September 2016, appellant pled guilty to one count of burglary in violation of R.C. 2911.12(A)(3), a felony of the third degree, and two counts of menacing by stalking in violation of R.C. 2903.211(A)(1), felonies of the fourth degree.  Appellant was sentenced to

three years in prison for the burglary conviction, which was run consecutively to concurrent 12-month prison terms on the menacing by stalking convictions, for an aggregate prison term of four years.

{¶ 3}  In June 2017, appellant filed a motion for judicial release.  On August 21, 2017, following a hearing on appellant's motion, the trial court granted appellant judicial release. The court modified appellant's sentence to place him on community control with the conditions that he serve six months at the Community Correctional Center ("CCC"), have no contact with the victim, and pay $2,100 in restitution to the victim.  The court noted that appellant had earned 386 days of jail-time credit and advised appellant that a violation of the rules of his supervision could lead to the remainder of his four-year prison term being imposed.

{¶ 4}  On October 12, 2017, appellant's probation officer reported that appellant had violated the terms of his community control by having "numerous contacts with his victim" and by being "unsuccessfully terminated from CCC on October 11, 2017."  Appellant ultimately pled guilty to the violations on October 25, 2017.  The trial court continued appellant on community control, noted that appellant had earned 450 days of jail-time credit, and ordered appellant to complete a community-based correctional facility ("CBCF") program and have no contact with the victim.  Unlike the court's prior entry granting appellant judicial release, the court's October 26, 2017 entry finding a violation of community control did not set forth the prison term that could be imposed for any further violation of appellant's community control.

{¶ 5}  On January 31, 2018, appellant's probation officer again reported that appellant had violated the terms of his community control.  The officer alleged appellant had violated Rule 13 of his community control terms by being "[u]nsuccessfully [t]erminated from the

MonDay program on January 30, 2018."[1] A preliminary hearing was scheduled for February 5, 2018, at which time counsel was appointed and appellant was ordered to remain detained pending further proceedings. The final hearing on appellant's community control violation was held on February 28, 2018. At the hearing, the state presented testimony from appellant's probation officer and from a clinician from the MonDay program.

{¶ 6} Appellant's probation officer testified that as a condition of appellant's community control, appellant was ordered to complete a CBCF program. The probation officer noted appellant had been unsuccessfully terminated from CCC after approximately 30 days for bullying other residents, rule infractions, and an overall lack of performance in the program. Appellant was subsequently unsuccessfully discharged from the MonDay program on January 30, 2018.

{¶ 7} The clinician from the MonDay program testified that appellant was his resident while appellant was in the MonDay program. Appellant had entered the program on November 21, 2017 and was discharged for disciplinary reasons 72 days later, on January 30, 2018.

{¶ 8} While in the MonDay program, appellant had 24 rule violations, including violations for wrestling, noncompliance with staff directives, improperly trading and loaning items to other residents, and failing to follow his treatment plan. To address these violations and appellant's behavioral issues, the clinician met directly with appellant and placed appellant on two behavior contracts. Appellant was also placed on a Prison Rape Elimination Act ("PREA") prepredator safety plan contract after N.M., a resident appellant had wrestled with, reported appellant had made sexual gestures and comments towards him. Appellant was advised by the clinician of the rules of that safety plan, which included having no contact

---

1. Rule 13 of appellant's community control terms required appellant to "follow all rules and regulations of treatment facilities or programs of any type in which [he] was placed or ordered to attend while under the

- 3 -

with N.M. and remaining at least 15 feet away from N.M. at all times.

{¶ 9} On January 29, 2018, appellant broke additional rules of the MonDay program by showering at a time that was not designated for his pod and by remaining in the shower area for more than 40 minutes when he was only permitted five minutes to shower. The clinician had viewed still photographs taken from surveillance footage, which showed appellant entering the bathroom at 9:01 p.m., entering the shower area at 9:42 p.m., and exiting the shower area at 10:24 p.m. During the time that appellant was showering, N.M. was also in the shower. The clinician believed that appellant was stalking N.M. However, on cross-examination, the clinician admitted that it was possible that appellant may not have known that N.M. was in the shower at the same time as him, as the shower stalls were private and N.M. did not enter the shower area until 10:18 p.m.

{¶ 10} The clinician testified that in addition to appellant violating his behavior contracts and PREA prepredator safety plan, appellant had made minimal progress in the MonDay program. Although appellant had been in the program for more than two months, appellant had not progressed beyond the first stage of the five-stage program.

{¶ 11} Appellant took the stand in his own defense, testifying that he had been making progress in the MonDay program and that he had not bullied or made sexual comments towards N.M. Appellant admitted to committing multiple rule violations, including wrestling with N.M., loaning personal items to N.M., showering at a time that was not designated for his pod, and being present in the shower area when N.M. was showering. However, appellant denied knowing that N.M. was showering at the same time as him, saying he did not see or hear N.M. at that time.

{¶ 12} After considering the foregoing testimony, the trial court found appellant had violated his community control. The court revoked appellant's community control and

jurisdiction of the Court, and/or Ohio Department of Rehabilitation and Correction."

reimposed its original sentence for the violation, ordering appellant to serve three years in prison on the burglary count consecutively to concurrent 12-month prison terms on the menacing by stalking counts, for an aggregate prison term of four years. The court awarded appellant 574 days of jail-time credit.

{¶ 13} Appellant appealed, raising four assignments of error for our review. For ease of discussion, we will address appellant's assignments of error out of order.

{¶ 14} Assignment of Error No. 2:

{¶ 15} THE TRIAL COURT ERRED IN FINDING THE [APPELLANT] IN VIOLATION OF THE TERMS OF COMMUNITY CONTROL SANCTIONS AS THE SAME WAS NOT SUPPORTED BY INDEPENDENT EVIDENCE OTHER THAN HEARSAY.

{¶ 16} In his second assignment of error, appellant argues the trial court erred when it found him in violation of the terms of his community control sanction as the court relied solely on hearsay evidence offered by the clinician to support its finding. Appellant maintains that the clinician from the MonDay program had "no independent knowledge" of the events that led to appellant's discharge from the program.

{¶ 17} A community control revocation hearing is not a criminal trial, and the state "does not need to prove a violation beyond a reasonable doubt." *State v. Baldwin*, 12th Dist. Clermont Nos. CA2015-10-082 and CA2015-10-086, 2016-Ohio-5476, ¶ 9. Rather, the state need only present substantial evidence of a violation of the terms of the defendant's community control. *State v. Kincer*, 12th Dist. Clermont No. CA2005-07-059, 2006-Ohio-2249, ¶ 5, citing *State v. Hylton*, 75 Ohio App.3d 778, 782 (4th Dist.1991).

{¶ 18} The right to continue on community control depends on a defendant's compliance with community control conditions and is a matter that rests within the sound discretion of the trial court. *Baldwin* at ¶ 9, citing *State v. Wolpert*, 12th Dist. Butler No. CA2006-10-244, 2007-Ohio-4734, ¶ 10. An appellate court, therefore, reviews a trial court's

decision to revoke a defendant's community control for an abuse of discretion. *Kincer* at ¶ 5. As this court has previously recognized, "a trial court does not abuse its discretion in revoking community control when the offender is on notice that successful participation in a particular program is a requirement of the community control and the offender is unsuccessfully discharged from the program." *State v. Bishop*, 12th Dist. Clermont No. CA2010-08-054, 2011-Ohio-3429, ¶ 11.

{¶ 19} At the revocation hearing, the trial court heard testimony from appellant's probation officer and from the clinician at the MonDay program that appellant had been unsuccessfully discharged from the program on January 30, 2018 despite being ordered to complete a CBCF program. The clinician explained that appellant had failed to abide by the MonDay program's rules and had committed 24 rule violations. The most recent violations occurred on January 29, 2018, when appellant showered at a time that was not designated for his pod, showered for more than 40 minutes when only permitted five minutes to shower, and violated his PREA prepredator safety plan contract by showering at the same time as N.M., the individual he was told not to have any contact with and was required to remain 15-feet away from at all times.

{¶ 20} Appellant contends the clinician had no independent knowledge of these events and argues the trial court erred by allowing hearsay testimony about these events. As an initial matter, we note that community control hearings are not subject to the rules of evidence, thus allowing for the admission of hearsay evidence. *Kincer* at ¶ 6. Evid.R. 101(C)(3) expressly provides that the Rules of Evidence do not apply to community control sanctions proceedings. However, the introduction of hearsay evidence into a community control proceeding results in reversible error if the hearsay evidence was the only evidence presented and it was crucial to a determination of a community control violation. *State v. Ohly*, 166 Ohio App.3d 808, 2006-Ohio-2353, ¶ 21 (6th Dist.). In the present case, the

clinician testified that her knowledge of the January 29, 2018 violations was a result of viewing still photographs from surveillance footage of the bathroom and shower area. These photographs were introduced into evidence and corroborated the clinician's testimony that appellant entered the shower area at 9:42 p.m., was present in the shower area at the same time as N.M., and did not depart the shower area until 10:24 p.m.

{¶ 21} As the clinician's testimony and the photographs introduced at the hearing provide substantial evidence supporting appellant's termination from the MonDay program for cause, we conclude that the trial court did not err in finding a violation of appellant's community control. Appellant's second assignment of error is, therefore, overruled.

{¶ 22} Assignment of Error No. 1:

{¶ 23} THE TRIAL COURT ERRED IN FAILING TO NOTIFY THE [APPELLANT] OF THE SPECIFIC PRISON TERM THAT COULD BE IMPOSED FOR AN ADDITIONAL VIOLATION OF COMMUNITY CONTROL.

{¶ 24} In his first assignment of error, appellant contends the trial court erred by sentencing him to a four-year prison term for violating the conditions of his community control since the court did not advise him at his most recent community control violation hearing of the potential four-year prison term he faced if he violated his community control conditions again. In support of his argument, appellant relies on *State v. Brooks*, 103 Ohio St.3d 134, 2004-Ohio-4746; and *State v. Fraley*, 105 Ohio St.3d 13, 2004-Ohio-7110.

{¶ 25} In *Brooks*, the Ohio Supreme Court held that pursuant to R.C. 2929.19(B)(4) and 2929.15(B), "a trial court sentencing an offender to a community control sanction must, at the time of sentencing, notify the offender of the specific term that may be imposed for a violation of the conditions of the sanction, as a prerequisite to imposing a prison term on the

offender for a subsequent violation." *Brooks* at paragraph two of the syllabus.[2]  In *Fraley*, the supreme court was tasked with determining "the timing of notification required by statute in order to impose a prison term when an offender violates his community control sanctions multiple times."  *Fraley* at ¶ 15.  At the defendant's original sentencing hearing, he was not informed of the possible prison sentence that could be imposed if he violated community control.  *Id.* at ¶ 1, 19.  However, the defendant was subsequently notified at his third violation hearing.  *Id.* at ¶ 4, 19.  The supreme court therefore concluded that the defendant could be sentenced to prison when he was found to have violated his community control a fourth time.  *Id.* ¶ 17-19.  The court held that,

> pursuant to R.C. 2929.19(B)([4]) and 2929.15(B), a trial court sentencing an offender upon a violation of the offender's community control sanction must, at the time of such sentencing, notify the offender of the specific prison term that may be imposed for an additional violation of the conditions of the sanction, as a prerequisite to imposing a prison term on the offender for such a subsequent violation.

*Id.* at ¶ 18.

{¶ 26} Following *Fraley*, appellate courts have been asked to determine whether, under *Fraley*, a notification is required at every violation sentencing hearing if proper notice has already been given.  *See, e.g., State v. Harris*, 9th Dist. Summit No. 28357, 2017-Ohio-7914; *State v. Batty*, 4th Dist. Ross No. 13CA3398, 2014-Ohio-2826; *State v. Snoeberger*, 2d Dist. Montgomery No. 24767, 2013-Ohio-1375; *State v. Hodge*, 8th Dist. Cuyahoga No. 93245, 2010-Ohio-78.  We have previously considered this issue and determined that "a trial court is not required to re-advise the defendant 'over and over again at each and every hearing that may occur thereafter.'"  *State v. Holloway*, 12th Dist. Butler No. CA2016-08-152,

---

2. In *State v. Brooks*, 103 Ohio St.3d 134, 2004-Ohio-4746, the Ohio Supreme Court referenced section (B)(5) of R.C. 2929.19.  The statute was later amended and the language the court examined is now set forth in R.C. 2929.19(B)(4).

2017-Ohio-4039, ¶ 12, quoting *State v. Gladwell*, 12th Dist. Butler No. CA2016-07-139, 2017-Ohio-1331, ¶ 13.  Rather, this court has concluded that notification at the original sentencing hearing or at any subsequent community control violation hearing is legally sufficient.  *Id.*

{¶ 27} Appellant acknowledges that at the time he was granted judicial release and placed on community control, he was advised that a violation of his community control could lead to him being returned to prison to serve the remainder of his four-year prison term.  The court's August 21, 2017 Judgment Entry of Modification of Sentence specifically mentioned that the remainder of appellant's four-year prison term could be imposed for a community control violation.  Appellant's argument that the trial court was required to renotify him at each subsequent violation hearing in order to be authorized to sentence him to prison is contrary to this court's holding in *Gladwell* and *Holloway*.  As appellant was notified of the specific prison term he faced for a violation of his community control sanction at the time he was granted judicial release, we find the trial court did not err by imposing a prison term following appellant's second violation of his community control.

{¶ 28} We further note that appellant has based his argument that he was not notified of the potential prison term that could be imposed for a violation of his community control sanctions on the fact that the court's October 26, 2017 sentencing entry continuing his community control did not contain a provision setting forth the potential prison term for a further violation.  While appellant is correct that this entry did not contain such a provision, we note that appellant failed to provide the court with a transcript of the October 25, 2017 hearing on appellant's first community control violation.  We must presume regularity in that proceeding and that the trial court had, once again, notified appellant of the specific prison term that could be imposed for an additional violation of his community control.  *See, e.g., State v. Gregory*, 12th Dist. Clinton No. CA2006-05-016, 2006-Ohio-7037, ¶ 3 (noting that where an appellant has failed to provide a transcript necessary for resolution of an assigned

error, the appellate court has "no choice to but to presume the regularity of the lower court's proceedings and affirm"). *See also Batty*, 2014-Ohio-2826 at ¶ 35 (finding that where a defendant was properly notified at the original sentencing hearing of the potential prison term that could be imposed for a violation of the terms of the defendant's community control, the omission of the notice of the specific prison term from the sentencing entry does not affect the validity of the sentence).

{¶ 29} Accordingly, for the reasons stated above, we find no merit to appellant's arguments and conclude that the trial court did not err by imposing a prison term following appellant's second violation of his community control. Appellant's first assignment of error is overruled.

{¶ 30} Assignment of Error No. 4:

{¶ 31} THE TRIAL COURT ERRED IN IMPOSING A PRISON TERM OF EIGHTEEN (18) MONTHS ON THE OFFENSES OF MENACING BY STALKING.

{¶ 32} In his fourth assignment of error, appellant argues the trial court erred when it imposed a prison term of 18 months for the underlying menacing by stalking convictions as "[a]n eighteen-month sentence would result in approximately 547 days to be served [and by that point], [he] had already * * * served the whole term that could be imposed on the menacing by stalking offenses." Appellant contends that no commitment should have been ordered for the menacing by stalking offenses.

{¶ 33} "We review a prison sentence imposed for violating felony community control sanctions, as we review all felony sentences, pursuant to R.C. 2953.08(G)(2)." *State v. Neal*, 12th Dist. Clermont No. CA2018-09-068, 2019-Ohio-2277, ¶ 9, citing *State v. Ford*, 12th Dist. Clermont No. CA2018-07-052, 2019-Ohio-1196, ¶ 9. Under R.C. 2953.08(G)(2), an appellate court may modify or vacate a sentence only if it finds by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or

that the sentence is otherwise contrary to law. *Id.*; *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1.

**{¶ 34}** Pursuant to R.C. 2929.15(B), a trial court may impose a prison sentence as punishment for violating the terms and conditions of community control if the prison term is within the statutorily permitted range for the underlying offense and the offender was previously notified of the potential prison term at his sentencing hearing for the original criminal offense or a prior community control violation hearing. *Ford* at ¶ 10, citing R.C. 2929.15(B)(1)(c) and 2929.15(B)(3). *See also Brooks*, 2004-Ohio-4746, ¶ 29; *Fraley*, 2004-Ohio-7110 at ¶ 18.

**{¶ 35}** In the present case, contrary to appellant's assertions, the trial court did not impose an 18-month prison term for menacing by stalking. Rather, as both the transcript from the February 28, 2018 hearing and the court's judgment entry indicate, appellant was sentenced as follows for violating his community control a second time:

> It is hereby ORDERED that Defendant serve a term of Count 1 [burglary], 3 years in prison to run consecutive to Count III [menacing by stalking], 12 months in prison and Count IV [menacing by stalking], 12 months prison, with Counts III and IV running concurrently to each other for a total of 4 years in prison[.]

**{¶ 36}** R.C. 2929.15(B)(1)(c) provides that a prison term imposed as a penalty for a community control violation is "pursuant to section 2929.14 of the Revised Code." In turn, R.C. 2929.14(C)(8) provides that, "[w]hen consecutive prison terms are imposed pursuant to division (C)(1), (2), (3), (4), (5), (6), or (7) or division (H)(1) or (2) of this section, subject to division (C)(8) of this section, *the term to be served is the aggregate of all the terms so imposed.*" (Emphasis added). *See also* Ohio Adm.Code 5120-2-03.1(F) ("When consecutive stated prison terms are imposed, the term to be served is the aggregate of all of the stated prison terms so imposed"). Accordingly, the prison terms imposed for appellant's

community control violation are served as an aggregate sentence, and appellant is entitled to confinement credit against the aggregate four-year sentence that was imposed. The court therefore did not err in imposing a prison sentence for both the burglary and the menacing by stalking convictions. Furthermore, the sentence imposed by the trial court was not contrary to law and was supported by the record. Appellant's fourth assignment of error is overruled.

{¶ 37} Assignment of Error No. 3:

{¶ 38} THE COURT ERRED IN ITS JAIL-TIME CREDIT CALCULATION.

{¶ 39} In his third assignment of error, appellant argues the trial court erred when it only awarded him 574 days of jail-time credit. Appellant contends that at the time his community control was revoked, he was entitled to 576 days of credit.

{¶ 40} "Although the [department of rehabilitation and corrections] has a mandatory duty pursuant to R.C. 2967.191 to credit an inmate with jail time already served, it is the trial court that makes the factual determination as to the number of days of confinement that a defendant is entitled to have credited toward his sentence." *State ex rel. Rankin v. Ohio Adult Parole Auth.*, 98 Ohio St.3d 476, 2003-Ohio-2061, ¶ 7. Any error the trial court makes in this determination may be raised on direct appeal. *Id.* at ¶ 10.

{¶ 41} Pursuant to the version of R.C. 2967.191 in effect at the time appellant was sentenced,

> [t]he department of rehabilitation and correction *shall reduce* the stated prison term of a prisoner or, if the prisoner is serving a term for which there is parole eligibility, the minimum and maximum term or the parole eligibility date of the prisoner by *the total number of days that the prisoner was confined for any reason arising out of the offense* for which the prisoner was convicted and sentenced, including confinement in lieu of bail while awaiting trial, confinement for examination to determine the prisoner's competence to stand trial or sanity, confinement while awaiting transportation to the place where the prisoner is to serve the prisoner's prison term, as determined by the sentencing court under division (B)(2)(g)(i) of section 2929.19 of the Revised Code, and confinement in a juvenile facility. The department of

- 12 -

> rehabilitation and correction also shall reduce the stated prison term of a prisoner or, if the prisoner is serving a term for which there is parole eligibility, the minimum and maximum term or the parole eligibility date of the prisoner by the total number of days, if any, that the prisoner previously served in the custody of the department of rehabilitation and correction arising out of the offense for which the prisoner was convicted and sentenced.

(Emphasis added.) "All time served in a community-based correctional facility constitutes confinement for purposes of R.C. 2967.191." *State v. Napier*, 93 Ohio St.3d 646 (2001), syllabus.

{¶ 42} We have examined the record in the present case and find that the trial court erred by only awarding appellant 574 days of jail-time credit. At the time appellant was sentenced on February 28, 2018, he was entitled to a total of 576 days of credit. The record demonstrates appellant was arrested and jailed on August 1, 2016. He remained in jail while awaiting trial. On October 5, 2016, after pleading guilty to burglary and menacing by stalking, appellant was sentenced to a four-year prison term. Appellant remained imprisoned until the trial court granted his motion for judicial release and placed him on community control. However, at the time the court granted appellant judicial release, the court ordered that appellant be held in jail until he could be transferred to a CBCF. Appellant was transferred from jail to the CCC, where he remained until he was unsuccessfully discharged on October 11, 2017. Appellant was placed in jail upon his discharge from the CCC, where he remained while awaiting a hearing on his community control violation. On October 25, 2017, appellant was found to have violated his community control and was once again ordered to complete a CBCF program. The court ordered appellant held in jail until he could be transferred to the CBCF program. On November 21, 2017, appellant was transferred to the MonDay program, where he remained until he was unsuccessfully discharged on January 30, 2018. Appellant was placed in jail upon his discharge from the MonDay program, where he remained until he was found to have violated his community control and was sentenced to prison on February

- 13 -

28, 2018. Appellant was, therefore, confined for purposes of R.C. 2967.191, be it in a jail, prison, or a community based correctional facility, from August 1, 2016 until he was sentenced on February 28, 2018. Thus, appellant should have been awarded 576 days of jail-time credit.

{¶ 43} Appellant's third assignment of error is sustained. We reverse and remand the case for the limited purpose of permitting the trial court to revise the April 19, 2018 Amended Entry finding a violation of community control to reflect the 576 days of jail-time credit appellant is entitled to receive for the time he spent confined, as contemplated by R.C. 2967.191. In all other respects, the judgment of the trial court is affirmed.

{¶ 44} Judgment affirmed in part, reversed in part, and remanded for the limited purpose of correcting the amount of jail-time credit appellant is entitled to receive.

S. POWELL, J., concurs.

M. POWELL, J., concurs in part and dissents in part.

**M. POWELL, J., concurring in part and dissenting in part.**

{¶ 45} I concur in part and dissent in part. I concur with the majority's resolution of the second, third, and fourth assignments of error. I further concur in the majority's resolution of the first assignment of error affirming the imposition of a prison sentence because appellant failed to provide a transcript of the sentencing hearing when he was last continued on community control. However, I dissent from the majority's holding under the first assignment of error affirming the prison term imposed upon appellant because no further notice was required under R.C. 2929.19(B)(4) after appellant was notified of the specific prison term to which he may be subject when he was granted judicial release and initially placed on community control.

{¶ **46**} In my concurring opinion in *Holloway*, I expressed the opinion that the Ohio Supreme Court's decision in *Fraley* requires that the R.C. 2929.19(B)(4) notice be given when an offender is sentenced to community control, whether at the original sentencing or at subsequent community control violation sentencing, if a prison term is to be imposed as the penalty for the offender's next community control violation.[3] *State v. Holloway*, 12th Dist. Butler No. CA2016-08-152, 2017-Ohio-4039, ¶ 24, citing *State v. Fraley*, 105 Ohio St.3d 13, 2004-Ohio-7110, ¶ 15. I continue to hold that view.

---

3. I felt compelled to concur in *Holloway* because this court had previously ruled upon the issue in a unanimous opinion in *State v. Gladwell*, 12th Dist. Butler No. CA2016-07-139, 2017-Ohio-1331. I should have dissented then and do so now.